UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAVADO AUDRIC THOMPSON,

     Plaintiff,

v.                                                      Case No. 3:11cv423/RV/CJK

M. NICHOLS, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

     This prisoner civil rights case is before the court upon defendant Nichols' motion to dismiss (doc. 50) and plaintiff's response in opposition.  (Doc. 56).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).   Upon careful consideration of the record, the parties' submissions and the relevant law, the court concludes that defendants' motion to dismiss should be denied.

BACKGROUND AND PROCEDURAL HISTORY

     Plaintiff is an inmate of the Florida penal system currently confined at Northwest Florida Reception Center.  Plaintiff initiated this lawsuit on September 7, 2011, by filing a civil rights complaint under 42 U.S.C. § 1983.  (Doc. 1).  On November 30, 2012, plaintiff filed a third amended complaint, the operative pleading in this action. (Doc. 12).  Plaintiff's third amended complaint names as defendants

Nurse M. Nichols and Dr. W.D. Rummel,[1] both prison officials at Santa Rosa Correctional Institution.  (Doc. 12, p. 2).

Plaintiff states he notified Nurse Nichols through "inmate request and sick call call-outs that his diet was causing him major headaches, cold sweats, dizziness, weight lost [sic], and also high blood sugar that cause[d] fainting." (*Id.*, p. 5).  On May 12, 2011, plaintiff filed a grievance against Nichols for inadequate medical treatment.  (*Id.*).  Plaintiff claims Nurse Nichols retaliated against him for filing the grievance by denying plaintiff a diet change where "there was evidence that the diet complained of caused pain and suffering after changing the plaintiff's sugar level higher than normal" and by refusing to see him despite referrals from medical staff on August 29, November 15, and December 17 of 2011.  (*Id.*).  Plaintiff claims defendant Nichols violated his Eighth Amendment rights by exhibiting deliberate indifference to his serious medical needs.  (*Id.*, 6).  Plaintiff alleges Nichols' failure to provide treatment or a diet change resulted in him suffering from "painfull [sic] headaches, numb left arm, and other symptoms" for over a year.  (*Id.*).  Plaintiff contends these physical symptoms eventually resulted in mental and emotional injury.  (*Id.*, p. 6, 9).  As relief, plaintiff seeks monetary damages.  (*Id.*, p. 9).

On July 11, 2014, defendant Nichols filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting plaintiff failed to properly exhaust his administrative remedies and failed to state a claim upon which relief can

---

[1] Defendant Rummel was served with the complaint on July 3, 2014.  (Doc. 53).  To date, Rummel has not filed an answer.  Plaintiff's claims against Rummel are not at issue in this motion to dismiss.

be granted.[2]  (Docs. 50, 51).  Plaintiff opposes defendants' motion to dismiss, asserting (1) the exhibits accompanying plaintiff's response demonstrate that he properly exhausted his administrative remedies and (2) the allegations concerning Nurse Nichols' failure to provide a diet change are sufficient to state an Eighth Amendment claim.  (Doc. 56).

## DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides for a motion to dismiss a complaint where the complaint fails "to state a claim upon which relief can be granted."  In considering a Rule 12(b)(6) motion, the court reads plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff.  *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994).  There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice.  5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008).  Further, only well pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff.  *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.

---

[2] Throughout defendant Nichols' motion to dismiss, references are made to allegations plaintiff made in his prior complaints.  Under N.D. Fla. Local Rule 15.1, once an amended complaint is filed, all earlier complaints are disregarded.  The court, therefore, will limit the analysis of defendant's motion to dismiss to the claims it makes concerning the third amended complaint.

1992); *Marrero v. City of Hialeah*, 625 F.2d 499, 502 (5th Cir. 1980);[3] *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true").  Mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation")); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009) (explaining that conclusory allegations are not entitled to a presumption of truth).

As the Supreme Court reiterated in *Iqbal, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A complaint or counterclaim must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.*  The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570, 127 S. Ct. at 1974.

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

<u>Exhaustion Requirement</u>

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  28 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory pre-condition to suit.  *Booth v. Churner*, 532 U.S. 731, 739 (2001); *see also Porter v. Nussle*,  534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  *Porter*,  534 U.S. at 524.  Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both.  *Booth*, 532 U.S.  at 734.  The requirement is not subject to waiver by a court, or futility or inadequacy exceptions.  *See id.* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140 (1992) ("Where Congress specifically mandates, exhaustion is required.");  *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998).  Moreover, the PLRA requires "proper exhaustion," so that the agency has an opportunity to address the issues on the merits.  *Woodford v. Ngo*, 548 U.S. 81 (2006); *see also id.*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.").  A court must dismiss an action if satisfied that the

plaintiff failed to properly exhaust his available administrative remedies prior to filing suit.  *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000); *Alexander*, 159 F.3d at 1325-26.

The grievance procedures promulgated by the Florida Department of Corrections require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary.   FLA. ADMIN. CODE  r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010).  If an inmate is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance at the institution. *See* FLA. ADMIN. CODE r. 33-103.006(3)(e).  This is known as a formal "Grievance of a Medical Nature."  *Id.* at r. 33-103.008.  If the inmate is dissatisfied with the result of the medical formal grievance, the inmate may appeal to the Office of the Secretary.  *Id.* at r. 33-103.007.

Procedure for Ruling on Motion to Dismiss for Failure to Exhaust Administrative Remedies

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA").  The court held that the defense of failure to exhaust should be treated as a matter in abatement.  *Id*. at 1374.  "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter."  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374).  Because exhaustion is a matter in abatement, "it

should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendants' motion, and those in the plaintiff's response. *Id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

Plaintiff's Administrative Grievances

The evidence in the record establishes the following. On May 12, 2011, plaintiff filed an informal grievance alleging defendant Nichols failed to respond to his request for a diet change or otherwise treat his weight loss, dizziness, and cold sweats when experiencing hunger. (Doc. 52-2, p. 5-6). Plaintiff identified "Monday's pancake breakfast, Wednesday's french toast, and Saturday's coffee cakes

and oatmeal" as meals that caused extra hunger after eating.  (*Id.*, p. 5).   In the grievance, plaintiff stated "it's clear that I'm having problems with my diet and Ms. Nichols don't [sic] think I need a diet but she is not doing or did not provide any medical solution to help my condition[.]"  (*Id.*, p. 6).  Plaintiff requested that he be provided "with whatever medical assistance it takes to stop my suffering or to send me to a specialist that can identify and solve this problem[.]"  (*Id.*).  The grievance was denied on May 17, 2011; the response directed plaintiff "to go to sick call with the medical concerns you voice in this grievance."  (*Id.*, p. 5).  The response informed plaintiff the nursing staff would evaluate plaintiff's condition and, if needed, refer him to a clinician; if necessary, the clinician would refer him to a specialist.  (*Id.*).

Plaintiff proceeded to file a formal grievance on May 21, 2011. (Doc. 52-2, p. 7-8).  The formal grievance reiterated plaintiff's claim that certain meals were causing him to become extra hungry and resulting in weakness, dizziness, cold sweats, and a numb left arm.  (*Id.*, p. 7).  Plaintiff indicated he notified Nurse Nichols of his symptoms on multiple occasions and requested the medical staff or a specialist investigate the cause of these symptoms.  (*Id.*, p. 8).  Plaintiff's formal grievance was denied on May 31, 2011.  (*Id.*, p. 9).  Dr. Rummel's response to the formal grievance paralleled the response plaintiff received to the informal grievance; plaintiff was directed  to sign up for a sick call and undergo an evaluation by the nursing staff.  (*Id.*, p. 9). Rummel noted plaintiff has not "been to sick call in the past three months with the complaints you voice in this grievance."  (*Id.*, p. 9).

Plaintiff appealed the denial of his formal grievance to the Office of the Secretary on June 15, 2011. (Doc. 52-2, p. 2-3).  Plaintiff's appeal echoed the concerns expressed in both the informal and formal grievance.  Plaintiff indicated he

was experiencing numbness in his left arm and hand, as well as cold sweats at night. (*Id.*, p. 2).  Plaintiff further indicated consuming certain meals caused him to get extra hungry and light headed after consumption.  (*Id.*).  Plaintiff believed Nurse Nichols refused to treat him because he previously filed a grievance against her.  (*Id.*, p. 3). For relief, plaintiff requested a transfer between institutions so proper medications, diet, or treatment could be provided.  (*Id.*).  The Office of the Secretary responded in August, denying plaintiff's appeal and informing him that Dr. Rummel's response to the formal grievance was appropriate and facility staff were responsible for his treatment.  (*Id.*, p. 1).

Defendant contends plaintiff failed to exhaust the grievance process regarding Nurse Nichols' retaliation against plaintiff for filing the May 12, 2011 grievance. (Doc. 50, p. 9, 12).  Although plaintiff characterizes Nurse Nichols' failure to treat him as retaliation for filing the May 12, 2011 grievance, the reason plaintiff initiated the grievance process was because he believed Nurse Nichols was not providing adequate treatment.  (Doc. 52-2, p. 5-6). The third amended complaint also notes plaintiff notified Nurse Nichols through "inmate request and sick call call-outs that his diet was causing him major headaches, cold sweats, dizziness, weight lost, [sic] and also high blood sugar that cause[d] fainting.  (Doc. 12, p. 5).  Thus, plaintiff alleges an ongoing denial of medical care both before and after he filed the informal grievance on May 12, 2011.  Furthermore, plaintiff is not required to reinitiate the grievance process every time he is denied treatment for an ongoing condition.  *See Parzyck v. Prison Health Services, Inc.*, 627 F.3d 1215, 1219 (11th Cir. 2010) ("Nothing in the FDOC's grievance procedures requires inmates to file new grievances addressing every subsequent act by a prison official that contributes to the

continuation of a problem already raised in an earlier grievance."). The informal and formal grievances filed in May, and the grievance appeal filed in June, all sought a diet change or other treatment for plaintiff's symptoms. Plaintiff, therefore, properly exhausted the grievance process before filing the original complaint on September 7, 2011.

Eighth Amendment Standard

Defendant Nichols' motion to dismiss also asserts plaintiff has failed to state a claim upon which relief can be granted. The government has a constitutional duty to provide minimally adequate medical care to prisoners. *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). Nevertheless, not every prisoner claim of inadequate medical care states an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed.2 d 251 (1976). To prevail on a deprivation of medical care claim, a prisoner must prove three elements. First, "an objectively serious medical need" so grave that, "if left unattended, poses a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations and citations omitted). "[A] serious medical need is . . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted). The seriousness of the deprivation of medical care is measured by the detrimental effect the deprivation brought upon the person. *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994).

The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221

F.3d at 1258.  To establish the requisite intent, "a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. at 105, 97 S. Ct. at 291).  Deliberate indifference is not established "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 56 (1994).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842, 114 S. Ct. at 1983.  Disregard of the risk is also a question of fact that can be shown by standard methods.  *Id.* at 846.

Obviously, a complete denial of readily available treatment for a known serious medical condition violates the Constitution.  *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994).  Also, medical treatment can be so slight as to amount to no treatment at all.  Thus, the mere fact that treatment was provided does not end the inquiry.  *See Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) ("[G]rossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference."); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the eighth amendment.").  The prisoner must prove, however, that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain" and was not "merely accidental

inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, at 1258. Plaintiff must show that the challenged conduct was "very unreasonable in light of a known risk" of harm or suffering. *Hardin v. Hayes*, 52 F.3d 934, 939 (11th Cir. 1995) (citing *Farmer*, 114 S.Ct. at 1978-79). Disputes regarding the level of treatment or the existence of other treatment options do not alone evidence cruel and unusual punishment. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 292; *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). Where the inmate has received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d at 1035); *see also Woody v. Cronic*, 401 F. App'x. 509, 512 (11th Cir. 2010) (unpublished opinion) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference."). A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop* at 1033; *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980). Some of the ways in which prison officials might avoid Eighth Amendment liability is to show: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 114 S. Ct. at 1982-83.

For the final element of an Eighth Amendment claim, a plaintiff must show the officials' deliberate indifference caused the plaintiff's injury. *Taylor*, at 1258; *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

Taking the allegations in plaintiff's complaint as true, he suffered "major headaches, cold sweats, dizziness, weight lost [sic], and high blood sugar that cause[d] fainting" for over a year.  The cumulative effect of these symptoms, and the length they persisted, are sufficient to establish an objectively serious medical need. As to the second element, plaintiff alleges he repeatedly notified Nurse Nichols of his condition but she denied him a diet change or other treatment.  At this stage of the litigation, these allegations are sufficient to establish that Nurse Nichols had subjective knowledge of plaintiff's condition and disregarded the possible harm failing to treat that condition could cause.  Moreover, the allegation that Nurse Nichols refused to see plaintiff despite referrals from other medical staff is sufficient to establish Nurse Nichols was not merely negligent.  Thus, plaintiff's complaint satisfies the second element of a deprivation of medical care claim.  Finally, plaintiff alleges Nurse Nichols' failure to provide a diet change or treatment caused ongoing pain and suffering (Doc. 12, p. 6); this allegation is sufficient to satisfy the causation element.  Thus, plaintiff's complaint adequately states an Eighth Amendment claim for deprivation of medical care.  Although plaintiff's grievances indicate his diet was changed at one time and he received some medical attention (doc. 52-2, p. 2-9), defendant Nichols' assertion that "[p]laintiff's claim amounts only to a dispute with the [d]efendants, his medical providers, about treatment[,]" (Doc. 50, p. 15-16), is more appropriately brought in a motion for summary judgment.  *See Briggs v.*

*Hancock*, No. 3:13-cv-212-J-39MCR, 2014 WL 5378527 *7 (M.D. Fla. Oct. 21, 2014) ("The matters raised in the [defendants'] Motions to Dismiss would more properly be raised in a Rule 56 motion with supporting medical records, affidavits, and other relevant documents.  Plaintiff has pled 'enough facts to state a claim to relief that is plausible on its face.'" (*citing  Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

Defendant Nichols' motion to dismiss addresses several other issues, none of which should result in the dismissal of this case.  First, Nichols asserts plaintiff has failed to state a claim for retaliation under the First Amendment.  (Doc. 50, p. 16-17).  Although plaintiff characterized Nurse Nichols' conduct as retaliation, under the "Statement of Claims" portion of the complaint, plaintiff indicates he is only alleging a violation of his Eighth Amendment rights.  (Doc. 12, p. 9).  Second, defendant Nichols claims plaintiff cannot maintain an official capacity suit for monetary damages because of sovereign immunity.  (Doc. 50, p. 17).  The "Relief Requested" portion of plaintiff's complaint indicates he is suing the defendants in only their individual capacities.  Next, defendant Nichols claims she is entitled to qualified immunity.  (Doc. 50, p. 17-20).  "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss.  The motion to dismiss will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (citation and internal quotations omitted).  "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)

(citation and internal quotations omitted).  Taking plaintiff's allegations as true, Nurse Nichols intentionally refused to provide treatment to plaintiff despite his longstanding complaints and referrals from other medical staff.  As discussed above, this is sufficient to state an Eighth Amendment claim.   As to whether the constitutional right was clearly established, the Eleventh Circuit has "consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference."  *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir.1995) (citations omitted).  Thus, the motion to dismiss should not be granted on the basis of qualified immunity.  Finally, the motion to dismiss asserts that, under 42 U.S.C. 1997e(e), plaintiff may not sue for monetary damages absent a physical injury.  (Doc. 50, p. 20-23).  The undersigned previously issued a report recommending dismissal of this case because plaintiff failed to allege a physical injury sufficient to seek compensatory or punitive damages. (Doc. 13).  The Report and Recommendation was adopted by the district court. (Doc. 15).  Plaintiff appealed the district court's order and the Eleventh Circuit reversed, finding "the physical injury that [plaintiff] alleged rose above the *de minimis* threshold [the Eleventh Circuit] set out in *Harris*." (Doc. 27).  The claim that plaintiff has failed to allege a physical injury must fail.

Accordingly, it is respectfully RECOMMENDED:

That defendant Nichols' motion to dismiss (doc. 50) be DENIED.

At Pensacola, Florida this 27th day of February, 2015.

*/s/ Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).